```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,          :
                                   :    No. 10 Cr. 191 (JFK)
    - against -                    :
                                   :    Opinion & Order
ROBERT EGAN,                       :
                                   :
               Defendant.          :
-----------------------------------X
```

**JOHN F. KEENAN, United States District Judge:**

APPEARANCES:

    FOR THE GOVERNMENT:

        Preet Bharara, Esq.
        UNITED STATES ATTORNEY FOR THE
        SOUTHERN DISTRICT OF NEW YORK
        Of Counsel: Antonia Apps, Esq.
                  Anna E. Arreola, Esq.

    FOR DEFENDANT ROBERT EGAN:

        Marc Agnifilio, Esq.
        Osnat Lupesko-Persky, Esq.
        BRAFMAN & ASSOCIATES, P.C.

**JOHN F. KEENAN, United States District Judge:**

    Defendant Robert Egan ("Defendant" or "Egan") moves to set aside or modify the restraining order executed by this Court on April 19, 2010, and for a hearing pursuant to the Court of Appeals for the Second Circuit's holding in <u>United States v. Monsanto</u>, 924 F.2d 1186 (2d Cir. 1991). For the reasons that follow, Defendant's motion is denied.

## I. BACKGROUND

Egan is the principal and owner of Mount Vernon Money Center ("MVMC"), a New York company that, as of January 2010, was engaged in various cash management businesses, including check cashing, ATM replenishment, armored transportation, and payroll services. On March 10, 2010, a grand jury returned a seven-count Indictment against Egan and Bernard McGarry ("McGarry"), MVMC's Chief Operations Officer, charging them with one count of conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349, and six counts of bank fraud, in violation of 18 U.S.C. § 1344. The Indictment alleges that from at least in or about 2005 up to and including in or about February 2010, Egan and McGarry misappropriated tens of millions of dollars of their customers' money, using it to fund operating losses in MVMC's businesses and to enrich themselves.

On April 19, 2010, the Court granted the Government's ex parte application for a post-Indictment restraining order pursuant to 18 U.S.C. §§ 982(a)(2) and (b)(1) and 21 U.S.C. § 853(e)(1)(A) (the "Restraining Order"). The Restraining Order provides, among other things, that Defendant and his representatives shall not "transfer, sell, assign, pledge, distribute, hypothecate, encumber, attach or dispose in any manner" two residences located in Bedford Corners, New York,

several investment and bank accounts held by Egan, and a single bank account held in the name of his wife.

On June 2, 2010, Egan filed the instant motion[1] requesting relief from the Restraining Order.  Through his counsel, Egan claims that since his arrest, his only remaining sources of income are his pension benefits and his wife's social security benefits, which together total roughly $3,500 per month.  Egan claims that his household's diminished monthly income, together with their remaining assets, are insufficient to cover monthly living expenses and his legal costs.  He provides a table which details his "necessary" monthly costs, including his mortgage, food, vehicles, and property maintenance, which total $20,762.  As such, Egan seeks a modification of the Restraining Order to allow the release of certain restrained assets to pay for attorney's fees and his living expenses.  In the alternative, he asks the Court to set aside the Restraining Order on the theory that the Government has failed to establish probable cause that the restrained assets are forfeitable.[2]  On that point, he

---

[1]   Egan was joined by his wife, Iris Egan, in making the instant motion.  The Government argues that Iris Egan is statutorily prohibited under 21 U.S.C. § 853(k) from intervening in the matter to challenge the Restraining Order along with her husband.  Because the Court finds that the substance of the motion is without merit, it need not address whether Iris Egan was properly joined as a party to the motion.

[2]   As an aside, Egan also argues that he should be entitled to examine the affidavit provided to the Court ex parte in

requests a hearing, pursuant to United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991).

## II. DISCUSSION

### A. 21 U.S.C. § 853 and Monsanto

The forfeiture allegation in the Indictment is governed by the provisions of 21 U.S.C. § 853, which categorically provides that criminal defendants convicted of conspiracy and bank fraud charges "shall forfeit . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a)(1); see 18 U.S.C. §§ 982(2)(a) and (b)(1) (providing that the forfeiture of property of those convicted of bank fraud in violation 18 U.S.C. § 1344 shall be governed by 21 U.S.C. § 853). Pursuant to § 853(e)(1)(A), at any time after an indictment has been filed, the Government may move for a restraining order in order "to preserve the availability of property . . . for forfeiture under [section 853(a)]." A motion for a restraining order should be granted by the district court when there is "probable cause to believe that the assets are

---

support of the Government's motion for the Restraining Order. Defendant provides no authority to support the contention that this affidavit falls outside the purview of 18 U.S.C. § 3500, which does not require the disclosure of witness statements until after the witness testifies at trial on direct examination. Construing his argument as a motion for the production of this affidavit, it is denied.

4

forfeitable." United States v. Monsanto ("Monsanto III"), 491 U.S. 600, 615 (1989).

A court's ability to restrain assets before trial under 21 U.S.C. § 853(e)(1) was thoroughly addressed by the Second Circuit and the United States Supreme Court in the Monsanto line of decisions.  In that case, the same day the defendant was indicted on RICO and narcotics charges, the district court entered an order, pursuant to § 853(e)(1), prohibiting the defendant from selling or encumbering several assets.  The defendant then moved to vacate or modify the restraining order on the ground that he needed use of those restrained assets to hire the private counsel of his choice.  His motion was denied by the district court.  In United States v. Monsanto ("Monsanto II"), 852 F.2d 1400 (2d Cir. 1988), the Second Circuit, sitting en banc, reversed the district court, with the majority of the panel agreeing that the restraining order should be modified to release funds necessary to pay for attorney's fees.[3] Id. at 1402. The Supreme Court then granted certiorari and reversed, holding that § 853 provides no exemption for assets needed to retain counsel of choice and "neither the Fifth nor the Sixth Amendment

---

[3] The en banc panel was divided on the rationale for reversal:  as the Supreme Court observed, "[t]hree of the judges found that the order violated the Sixth Amendment, while three others questioned it on statutory grounds; two judges found § 853 suspect under the Due Process Clause for its failure to include a statutory provision requiring" a hearing. Monsanto III, 491 U.S. at 606.

5

to the Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees." Monsanto III, 491 U.S. at 614.

The Supreme Court did not address, however, the procedural aspects of such a pre-trial restraint of property under § 853(e)(1)(A). Id. at 615 n.10.  As such, on remand, the Second Circuit, again sitting en banc, addressed the issue of whether due process requires "an adversary post-attachment, pretrial hearing in order to continue an attachment of assets needed to retain counsel of choice." United States v. Monsanto (Monsanto IV), 924 F.2d 1186, 1191 (2d Cir. 1991).  The Second Circuit answered that question in the affirmative, holding that the "fifth and sixth amendments, considered in combination, require an adversary, post-restraint, pretrial hearing as to probable cause." Id. at 1203.

### B. Motion to Release Funds for Living Expenses and Professional Fees

The Court first addresses Defendant's request to modify the Restraining Order to release funds in the amount of $75,000 for the professional fees of his legal counsel and accountant and $20,762 per month to cover living expenses, including mortgage payments, food, insurance, and medicine.

It is first worth noting the Defendant's loose interpretation of the phrase "necessary living expenses."  The

Court does not take lightly a request to release funds allegedly stolen from former customers in order to finance luxuries such as $2,250 per month for Defendant's three high-end vehicles, the mortgage on his multi-million dollar home, and $900 per month for landscaping. Even if the Court were inclined to release immediately nearly $100,000 and roughly $20,000 every month thereafter so that the Defendant can maintain, while pending trial, the lavish lifestyle to which he has become accustomed, it does not have the authority to do so under § 853.

Defendant's request ignores Monsanto III, in which the Supreme Court held that a district court does not have the discretion to fashion a restraining order issued pursuant to § 853(e)(1) in such a manner as to allow the defendant to spend forfeitable assets. See Monsanto III, 491 U.S. at 612-13; see also United States v. Wingerter, 369 F. Supp. 2d 799, 811 (E.D. Va. 2005) ("[T]here is no discretion to permit a defendant to spend assets that are subject to forfeiture . . . . They must be preserved for forfeiture."). The Court reasoned that the straight-forward language of § 853(e)(1) "is plainly aimed at implementing the commands of § 853(a)" and, upon a motion by the Government and a finding of probable cause, it provides the Court no discretion other than to decline to enter a restraining order entirely in favor of a "bond or some other means to 'preserve the availability of property'" subject to forfeiture.

7

Monsanto III, 491 U.S. at 612 (quoting 21 U.S.C. § 853(a)). It held, therefore, that the forfeiture provision "cannot sensibly be construed to give the district court discretion to permit the dissipation of the very property that § 853(a) requires be forfeited upon conviction." Id. at 612-13.

Defendant's citations to cases relating to a court's authority to modify restraining orders issued in SEC civil enforcement actions and bankruptcy proceedings under its authority to reconsider its own orders are inapplicable in this context. Because the Court does not have the authority under § 853 to grant the relief that Defendant seeks, his request is denied.

### C. Motion for Hearing to Challenge Probable Cause

Notwithstanding the Court's lack of discretion to allow Egan to spend funds restrained on a showing of probable cause, Egan has been deprived of property and thus due process requires that he be provided an opportunity to contest that deprivation. Indeed, Defendant contends many of the restrained assets are not subject to forfeiture because he obtained them before the allegedly unlawful conduct. The relevant issue is not whether, but when, he should receive that opportunity: that is, whether his trial is a sufficient opportunity to be heard, or whether due process also requires a pre-trial hearing to challenge the forfeitability of the restrained assets.

8

A fundamental requirement of due process is the opportunity to be heard "in a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965). That right "is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). In determining the "specific dictates of due process," the court is to consider:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

As the Second Circuit held in Monsanto IV, the private interest "weighs particularly heavily" when a restraining order puts "beyond the defendant's reach assets which are demonstrably necessary to obtain the legal counsel he desires." 924 F.2d at 1193. In that unique circumstance, the restraining order may affect the defendant's qualified right to counsel of choice under the Sixth Amendment depending on the ultimate forfeitability of the restrained assets. If indeed the restrained assets are derived from unlawful activity, the restraining order does not affect the defendant's Sixth Amendment rights because he has no "right to spend another

person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 626 (1989). On the other hand, insofar as an order erroneously restrains non-forfeitable assets necessary to retain counsel, it deprives the defendant of his right to use those lawfully obtained assets to hire his counsel of choice. United States v. Stein, 541 F.3d 130, 155 (2d Cir. 2008) ("Although there is no Sixth Amendment right for a defendant to obtain counsel using tainted funds, a defendant still possesses a qualified Sixth Amendment right to use wholly legitimate funds to hire the attorney of his choice." (modification and emphasis omitted) (quoting United States v. Farmer, 274 F.3d 800, 804 (4th Cir. 2001))). A criminal defendant whose only means to retain counsel of choice are restrained assets thus has a legitimate interest in ensuring that probable cause is adequately established before his case proceeds to trial.

It is "particularly important" under these circumstances that the hearing occur before trial because "a defendant who is denied any pretrial opportunity to contest a restraint of assets needed to retain counsel is irrevocably deprived of that counsel." United States v. Hatfield, No. 06 Cr. 0550, 2010 WL 1685826, at *1 (E.D.N.Y. Apr. 21, 2010) (quoting Monsanto IV,

10

924 F.2d at 1195); United States v. Moya-Gomez, 860 F.2d 706, 726 (7th Cir. 1988) ("[W]ith respect to attorneys' fees, the freeze operates as a permanent deprivation. The defendant needs the attorney now if the attorney is to do him any good.").

Similarly, the circuit court found that the second consideration also favors an adversary proceeding because the risk of an erroneous deprivation of a defendant's interest in retaining counsel is more likely under the ex parte procedures of section 853(e)(1)(A). Monsanto IV, 924 F.2d at 1195; United States v. Jones, 160 F.3d 641, 646 (10th Cir. 1998) ("Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring))).

Based on those considerations, the Second Circuit held in Monsanto IV that when the court restrains assets under § 853(e)(1) needed to pay counsel of choice, due process generally requires a post-restraint, pre-trial hearing at which the defendant may challenge probable cause as to the underlying allegations and the forfeitability of the restrained property. 924 F.2d at 1203. However, as assumed in Monsanto IV, as a condition precedent to a pre-trial hearing, there must be some showing that the restrained funds are necessary to fund a legal defense. The Second Circuit's holding cannot be read to suggest

that due process requires a hearing whenever a defendant merely prefers to use restrained funds rather than untainted assets to pay his counsel of choice. On the instant motion, Defendant's counsel simply asserts in his moving papers that Defendant is seeking the modification in order to cover legal expenses among other things. This assertion, however, is not supported by any affidavit, sworn testimony, or any other evidence which demonstrates that the requested funds are <u>necessary</u> to retain Defendant's counsel of choice.

The presence of unrestrained assets fundamentally changes the due process balancing. When a defendant has sufficient unrestrained resources to retain the counsel of his choice, the private interest of protecting his Sixth Amendment right to counsel of choice is removed from the due process calculus. <u>Farmer</u>, 274 F.3d at 804 ("This private interest would be absent if [defendant] possessed the means to hire an attorney independently of assets that were seized."). It is then the Government's interests against a pre-trial hearing — including preserving forfeitable assets, conserving prosecutorial resources, and avoiding the premature disclosure of its trial strategy — that tip the balance towards waiting until trial to provide the defendant his opportunity to be heard.

For that reason, most courts require "an initial showing that [the defendant] has no other assets with which to retain

private counsel" as a pre-requisite to a pre-trial hearing to challenge a restraining order. United States v. Kramer, No. 06 Cr. 200, 2006 WL 3545026, at *4 n.4 (E.D.N.Y. Dec. 8, 2006); see United States v. Jamieson, 427 F.3d 394, 406 n.3 (6th Cir. 2005) (collecting cases); Jones, 160 F.3d at 647 ("Due process does not automatically require a hearing and a defendant may not simply ask for one. . . . [A] defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family."); Hatfield, 2010 WL 1685826 at *1 (holding that defendant is entitled to a Monsanto hearing "if she shows that she needs the restrained funds to 'retain counsel of choice'"). Cf. United States v. Milan-Colon, 836 F. Supp. 994, 1006-07 (S.D.N.Y. 1993) (providing the Government in advance of the scheduling of a Monsanto hearing the opportunity to "establish by a fair preponderance of credible evidence that [defendant] has access to or possession of funds or assets, other than those restrained, sufficient to enable him to retain private counsel"). Although this preliminary requirement is not spelled out explicitly in Monsanto IV, it is implicit in the circuit court's reasoning and thus I apply it here.

Because Defendant has not submitted any evidence that suggests that the restrained assets are necessary to retain his counsel of choice, his request for a Monsanto hearing is denied.

The absence of such evidence perhaps is explained by its nonexistence.  In opposition to Defendant's motion, the Government provided the Court Defendant's personal financial statement prepared roughly a month before his arrest and an insurance policy statement dated after his arrest.  These documents reflect that Egan and his wife still maintain considerable assets that are not subject to the Restraining Order, including several parcels of land, three notes receivable valued at approximately $405,000 in total, a time share property in Lake Tahoe worth approximately $25,000, jewelry and art totaling $480,000, and other "personal property" valued at $600,000.  Nevertheless, Defendant is granted leave to re-file his motion for a Monsanto hearing with evidence to support his contention that the restrained funds are necessary to retain his counsel of choice.

## III. CONCLUSION

Defendant's motion to set aside or modify the Restraining Order is denied. Defendant's request for a <u>Monsanto</u> hearing is also denied without prejudice. He is granted leave until August 24, 2010 to re-file his motion for a <u>Monsanto</u> hearing if it is supported by evidence that assets subject to the Restraining Order are necessary to fund his defense. The Government is to respond by September 6, 2010.

**SO ORDERED.**

Dated:   New York, New York
         July 29, 2010

_____
JOHN F. KEENAN
United States District Judge