**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:___August 2, 2011___

-----------------------------------------X
UNITED STATES OF AMERICA,                 :
                                          :
     -against-                            :
                                          :
ROBERT EGAN AND BERNARD McGARRY,          :
                                          :
                      Defendants.         :
-----------------------------------------X
BANK OF AMERICA, N.A.,                     :
CLOTHING EMPORIUM, INC.,                   :
DEP'T OF VETERANS AFFAIRS FEDERAL          :   10 Cr. 191 (JFK)
     CREDIT UNION,                         :
INSERRA SUPERMARKETS, INC.,                :   **OPINION AND ORDER**
MAHOPAC NAT'L BANK,                        :
MONEYGRAM INT'L, INC.,                     :
MONEY SPOT, INC.,                          :
THOSE INTERESTED UNDERWRITERS WHO          :
     SUBSCRIBED TO THE POLICIES/           :
     CERTIFICATES OF INSURANCE NUMBERED    :
     B0702BB008120Y AND UM00018767SP09A,   :
     AS SUBROGEES AND ASSIGNEES OF U.S.    :
     BANCORP,                              :
TRANS FAST REMITTANCE, LLC, and           :
XL SPECIALTY INS. CO. AND STARNET INS.    :
     CO., AS SUBROGEES AND ASSIGNEES OF    :
     WILMINGTON SAVINGS FUND SOCIETY,      :
                                          :
                      Claimants.          :
-----------------------------------------X


APPEARANCES

     For the United States of America:
          PREET BHARARA, UNITED STATES ATTORNEY FOR THE SOUTHERN
          DISTRICT OF NEW YORK
          By: Assistant United States Attorney David I. Miller
              Assistant United States Attorney Antonia Apps

     For Claimant Bank of America, N.A.:
          ZEICHNER ELLMAN & KRAUSE LLP
          By: Barry J. Glickman, Esq.

For Claimant Clothing Emporium, Inc.:
     GLEASON & KOATZ, LLP
     By:  John P. Gleason, Esq.

For Claimant Department of Veterans Affairs Federal Credit
Union:
     GOLDMAN & VAN BEEK, P.C.
     By:  John P. Van Beek, Esq.
         Holly A. Currier, Esq.

For Claimant Inserra Supermarkets, Inc.:
     COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
     By:  Michael S. Weinstein, Esq.

For Claimant Mahopac Nat'l Bank:
     DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP
     By:  Frank J. Haupel, Esq.

For Claimant MoneyGram International, Inc.:
     GIBSON, DUNN & CRUTCHER LLP
     By:  Alexander H. Southwell, Esq.

For Claimant Money Spot, Inc.:
     HELLER, HOROWITZ & FEIT, P.C.
     By:  Eli Feit, Esq.
         Stuart A. Blander, Esq.

For Claimants Those Interested Underwriters Who Subscribed
to the Policies/Certificates of Insurance Numbered
B0702BB008120Y and UM00018767SP09A, as Subrogrees and
Assignees of U.S. Bancorp:
     LANKLER & CARRAGHER, LLP
     By:  Michael F. Armstrong, Esq.
         Owen B. Carragher, Esq.
         César de Castro, Esq.

For Claimant Trans Fast Remittance, LLC:
     WINNE, BANTA, HETHERINGTON, BASRALIAN & KAHN, P.C.
     By:  Michael J. Cohen, Esq.

For Claimants XL Specialty Insurance Company and Starnet
Insurance Company, as Subrogees and Assignees of Wilmington
Savings Fund Society:
     LANKLER & CARRAGHER, LLP
     By:  Michael F. Armstrong, Esq.
         Owen B. Carragher, Esq.
         César de Castro, Esq.

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

## I.  Introduction

A grand jury in the Southern District of New York indicted Robert Egan ("Egan") and Bernard McGarry ("McGarry") on March 10, 2010, charging the defendants with one count of conspiracy to commit wire and bank fraud and six counts of bank fraud.  On September 15, 2010, Egan pleaded guilty to all seven counts.  On October 13, 2010, McGarry pleaded guilty to all seven counts as well.  On June 17, 2011, Egan and McGarry were sentenced to prison terms of 11 years and 5 years, respectively.

This is an ancillary forfeiture proceeding concerning the Government's seizure of $19,288,702.72 in United States currency from two vaults owned by Mount Vernon Money Center, Egan's company.  This money was seized in the course of the Government's investigation of fraud allegations against both defendants.  On September 15, 2010, Robert Egan consented to the entry of a preliminary forfeiture order, in which he disclaimed any interest in the money seized by the Government.

Pursuant to 21 U.S.C. § 853(n), claimants Bank of America, N.A. ("Bank of America"), Clothing Emporium, Inc. ("Clothing Emporium"), Department of Veterans Affairs Federal Credit Union ("DVA Credit Union"), Inserra Supermarkets, Inc. ("Inserra"), Mahopac National Bank ("Mahopac"), MoneyGram International, Inc. ("MGI"), Money Spot, Inc. ("Money Spot"), Those Interested

Underwriters Who Subscribed to the Policies/Certificates of Insurance Numbered B0702BB008120Y and UM00018767SP09A, as Subrogees and Assignees of U.S. Bancorp (the "U.S. Bancorp Assignees"), Trans Fast Remittance, LLC ("Trans Fast") and XL Specialty Insurance Company and Starnet Insurance Company, as Subrogees and Assignees of the Wilimington Savings Funds Society (the "Wilmington Assignees") (collectively, the "Claimants"), each petition the Court for the return of a portion of the money seized.

Before the Court is the Government's motion to dismiss these petitions for lack of standing and failure to state a claim pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure ("Criminal Rule 32.2").  For the reasons set forth below, the Government's motion to dismiss is denied.  All parties to this ancillary forfeiture proceeding are directed to appear for a pre-hearing conference on August 29, 2011, at 11:00 a.m. in Courtroom 20-C of the Daniel Patrick Moynihan United States Courthouse.

## II.  Factual Background

A motion to dismiss a petition for an ancillary forfeiture proceeding pursuant to Criminal Rule 32.2(c)(1)(A) is treated as a motion to dismiss a civil complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Civil Rule 12"). <u>Willis Management (Vermont), Ltd. v. United States</u>, No. 10-1616-

cv, --- F.3d ----, 2011 WL 2726055, at *5 (2d Cir. July 14, 2011) (quoting Pacheo v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004)).   Therefore, the Court accepts as true all factual allegations in the petitions and draws all reasonable inferences in favor of the Claimants.  See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 424 (2d Cir. 2008).   The Claimants' petitions agree on all facts relevant to the instant motion.   In addition to the allegations in the petitions, this section includes items from the record before the Court during the sentencing of Egan and McGarry.

A.    **The Criminal Case Against Egan and McGarry**

Egan was the President and owner of Mount Vernon Money Center ("MVMC"), a New York corporation that operated a number of cash management businesses through various subsidiaries. These businesses offered check cashing, ATM replenishment, armored transportation, and on-site payroll services.  McGarry was a long-time employee of MVMC and served as its Chief Operating Officer.  The operating agreements between MVMC and its customers required MVMC to segregate each customer's funds stored in its vaults, and to use only each customer's own funds to fulfill orders for cash delivery.  In 2005 or at some prior time, Egan began to use his customers' funds to finance MVMC's business operations, and commingled customer funds to conceal his misappropriation of the stolen funds, a practice referred to

by the Government as "playing the float." (Indictment ¶ 12.)
Egan also used money taken from MVMC customers to fund millions
of dollars in officer loans he took out from MVMC.  McGarry
conspired with Egan and assisted in his perpetration of the
fraudulent scheme, though McGarry maintained at sentencing that
he had believed Egan possessed "sufficient personal and business
assets to make up the short fall." (Sent. Mem. of Bernard
McGarry 2, Apr. 13, 2011, ECF No. 129.)

**B.    The Seizure**

On January 29, 2010, Webster Bank ("Webster"), a customer
of MVMC's ATM-replenishment business, discovered Egan and
McGarry's scheme and reported it to the Federal Bureau of
Investigation ("FBI").  The FBI arrested Egan and McGarry on
February 8, 2010, and on February 11 and 12, 2010, seized from
two MVMC vaults the funds that are the subject of this ancillary
proceeding.  Special Agent James Hilliard of the FBI
participated in the seizure of funds from the MVMC vaults, and
has submitted two affidavits describing the FBI's investigation
of the MVMC fraud scheme.  One declaration is dated October 18,
2010 (the "First Hilliard Declaration"), and the other is dated
January 31, 2011 (the "Second Hilliard Declaration").  The First
Hilliard Declaration describes Egan and McGarry's operation of
MVMC, the methods by which Egan and McGarry defrauded MVMC
customers, and the specific circumstances of the FBI's seizure

-4-

of MVMC funds on February 11 and 12, 2010. (First Hilliard Decl.
¶ 8.)

The Second Hilliard Declaration adds additional detail
relating to the petitions of Granite Check Cashing Service, Inc.
("Granite Check Cashing"), James Lieto ("Lieto"), B&H Check
Cashing Services of Brooklyn ("B&H Check Cashing"), Mark
Barberan ("Barberan"), NY Community Financial, LLC ("NY
Community Fin."), and R.D.C. Payroll Services, Inc. ("R.D.C
Payroll") (collectively, the "Settled Claimants"), former MVMC
customers whose claims were settled by the Government prior to
the filing of the instant motion to dismiss.

According to Hilliard, MVMC defrauded its ATM-replenishment
customers by disregarding the ownership or source of funds
whenever it filled ATMs, in violation of the express terms of
the contracts between MVMC and the ATM-replenishment customers.
(First Hilliard Decl. ¶ 8(f).)  Hilliard asserts that "MVMC
employees did not go through the process of segregating an ATM
customer's cash when it was picked up from the Federal Reserve
(or some other source)." (Id.)  Although individual customer's
accounts were tracked on MVMC's computer system, "the actual
cash in the vault was not segregated in accordance with the
records on the computer system." (Id.)  MVMC employees
responsible for managing its vaults routinely commingled vault
funds that were kept in segregated trays or bins. (Id. ¶ 9(g).)

-5-

Hilliard further states that a similar fraudulent scheme was perpetrated against the customers of MVMC's payroll services business and Armored Money Services ("AMS"), MVMC's armored courier services company. (Id. ¶ 9(h).)  AMS provided cash counting and processing services to certain customers, and delivered payments to some of these customers by wire transfer. (Id. ¶ 9(i).)

## C.   Government's Forfeiture Allegations and Handling of the Seized Funds

In the course of its investigation of the fraud allegations against Egan and McGarry, the FBI seized $19,288,702.72 (the "Seized Funds") from two MVMC-owned vaults on February 11 and 12, 2010, after obtaining an order of restraint with Egan's consent. (First Hilliard Decl. ¶ 10.)[1]  According to Hilliard, the FBI seized trays containing cash, trays containing coins, and bags containing cash and checks. (Id. ¶ 11(a)-(c).) Hilliard reports that MVMC kept the trays of cash in the main area of the vault, rather than separate customer bins, but also relates that the trays were marked with identifying serial and tray numbers. (Id. ¶ 11(a).)  The seized bags were also marked with identifying information, including a customer name and serial number. (Id. ¶ 11(b).)

---

[1] The First Hilliard Declaration contains two paragraphs that are numbered, "10."  The Court refers to the second paragraph 10 as paragraph 11.

The cash and coins in MVMC's vaults were taken and delivered by MVMC armored cars under the direction of the FBI to a facility in Brooklyn, New York operated by Brink's, Inc. ("Brinks"). (Id. ¶ 10.)  At the Brooklyn facility, the money was counted by Brinks employees, but the Brinks employees did not count the money in each seized bag to confirm the accuracy of the information on the outside of the bags. (Id. ¶¶ 10, 11(b).) The Seized Funds are currently being held by the U.S. Marshal's Service, and the FBI is maintaining the now-empty bags. (Id. ¶¶ 10, 11(b) n. 6.)

In the First Hilliard Declaration, Hilliard explains that the FBI was unable to determine whether particular bags containing Seized Funds had been opened and the funds within commingled. (Id. ¶ 11(b).)  However, in pursuit of the Government's effort to resolve the claims of Settled Claimants, Hilliard submitted a supplemental declaration detailing his further investigation of the allegations in the Settled Claimants' petitions.  Hilliard concluded that the Settled Claimants' funds were never commingled with other customers' funds and that AMS never violated its contracts with the Settled Claimants. (Second Hilliard Decl. ¶ 8.)  The primary basis for this determination was Hilliard's finding that the Settled Claimants' funds were picked up in sealed bags from third-party banks overnight and delivered to the Settled Claimants the next

-7-

morning. (Id. ¶ 8(c).)  There is no suggestion in either of
Hilliard's declarations that the bags marked as belonging to the
Settled Claimants were in a condition different from the
condition of the bags marked as belonging to the Claimants.

Having settled the Settled Claimants' petitions, the
Government seeks forfeiture of the remaining portions of the
Seized Funds on the theory that these funds constitute
"proceeds" of Egan and McGarry's fraud.

**D.   Procedural History of this Ancillary Proceeding**

The Court entered the Consent Order of Forfeiture as to
Specific Property on September 15, 2010 (the "September Consent
Order"), in which Egan disclaimed any interest in
"[a]pproximately $19,288,702.72 in United States currency,
seized on or about February 11, 2010 and Feburary 12, 2010, from
Mount Vernon Money Center locations at 44 N. Saw River Road,
Elmsford, NY and 403 East 3rd Street, Mount Vernon, NY."
(September Consent Order 2, Sept. 15, 2010, ECF No. 67.)  In the
September Consent Order, the Government stated that it would
publish a notice on the government's forfeiture World Wide Web
site, http://www.forfeiture.gov, in accordance with its
statutory obligations, and would also send notice to "any person
who reasonably appears to be a potential claimant with standing
to contest the forfeiture in the ancillary proceeding."
(September Consent Order 3-4.)

In response to the September Consent Order, eleven petitions requesting ancillary proceedings to contest the forfeiture of the Seized Funds were filed within thirty days of the Government's final publication of a forfeiture notice on its World Wide Web site, as required by statute:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice . . . whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

21 U.S.C. § 853(n)(2).  The Government raised no timeliness objection to any of the petitions filed before December 31, 2010.  The name of each claimant, along with the amount of recovery sought, is set forth in Table One, below.

In February 2011, the Government settled the petitions filed on behalf of Granite Check Cashing Service, Lieto, B&H Check Cashing Service, Barberan, NY Community Fin. and R.D.C. Payroll; the three petitions of the Settled Claimants are no longer before the Court.[2]  Of the eleven petitions filed prior to December 31, 2010, eight are still in dispute.  On March 7, 2011, the Government filed its Omnibus Motion to Dismiss the eight remaining petitions on March 8, 2011, and the Claimants

---

[2] The petitions of the Settled Claimants are indicated with a gray background in Table One, below.  Active petitions are indicated with a white background in Table One on page 12, _infra_.

filed their opposition memoranda between April 27 and May 6,
2011.

On April 29, 2011, Mahopac National Bank ("Mahopac")
requested permission to file a petition challenging the
forfeiture of a portion of the Seized Funds, despite the passage
of more than thirty days from the final publication of the
Government's forfeiture notice.  In a subsequent letter-brief,
Mahopac argued that it had not been given adequate notice of the
forfeiture because the MVMC entity of which it had been a
customer, American Armored Car, Ltd. was not specifically
mentioned in the Government's published notice of forfeiture.

In a Memorandum Opinion and Order entered on May 24, 2011,
the Court held that the published notice did not clearly meet
the "reasonable particularity" requirement of Rule
G(4)(a)(ii)(A) of the Supplemental Rules for Admiralty or
Maritime Claims and Asset Forfeiture Actions because a customer
"of [American Armored Car] who was unaware of its relationship
to Egan, McGarry, and MVMC would not have been put on notice
that its property was being claimed for forfeiture." United
States v. Egan, No. 10 Cr. 191 (JFK), 2011 WL 2022824, at *2
(S.D.N.Y. May 24, 2011).  The Court's acceptance of Mahopac's
letter as a petition for an ancillary forfeiture proceeding was
contingent on the filing of an affidavit attesting to the
accuracy of the facts asserted in the letter, including

-10-

Mahopac's failure to receive the Government's forfeiture notice. Id. Mahopac filed such an affidavit on June 1, 2011. (See Aff. of Noreen Branaccio, June 1, 2011, ECF No. 162.)

On June 1, 2011, the Court received a letter on behalf of Inserra Supermarkets, Inc. ("Inserra") and two of its wholly-owned subsidiaries, requesting permission to file a petition challenging the Government's forfeiture of a portion of the Seized Funds. Inserra and its subsidiaries, like Mahopac, claimed that the Government's notice of forfeiture failed to provide them with adequate notice of the Government's intent to seek forfeiture because the MVMC subsidiary with which they transacted was not specifically named in the Government's published forfeiture notice. An affidavit supporting its claims was attached to Inserra's letter, and the Court accepted the letter for filing. United States v. Egan, No. 10 Cr. 191, slip op. at 1 (S.D.N.Y. June 1, 2011).

The amount of Mahopac's and Inserra's claims are set forth in Table Two, below. No further petitions have been filed, and the Government addressed the applicability of the instant motion to dismiss to the Mahopac and Inserra petitions in its Reply Memorandum.

| Table One (Petitions Filed Prior to December 31, 2010) | |
|---|---|
| Claimant | Amount |
| Bank of America | $4,042,020.00 |
| Clothing Emporium | $106,320.00 |
| DVA Federal Credit Union | $155,000.00 |
| MGI | $6,796,542.84 |
| Money Spot | $170,000.00 |
| Trans Fast Remittance | $102,281.91 |
| U.S. Bancorp Assignees | $3,310,000.00 |
| Wilmington Assignees | $493,930.00 |
| Granite Check Cashing Service and Lieto | $392,000.00 |
| B&H Check Cashing Service and Barberan | $480,000.00 |
| NY Community Fin and R.D.C. Payroll | $340,000.00 |
| Table Two (Petitions Filed After January 1, 2011) | |
| Mahopac | $404,000.00 |
| Inserra | $146,984.84 |

In total, ten petitions, seeking a total of $15,727,079.59 of the $$19,288,702.72 in Seized Funds, are now before the Court.

**E.    Interests in the Seized Funds Asserted by the Claimants**

The ten pending ancillary forfeiture petitions that are the subject of the instant motion to dismiss seek recovery of different amounts of money, but all assert legal interests in portions of the Seized Funds.  Bank of America, Clothing Emporium, DVA Federal Credit Union, Inserra, Mahopac, MGI, Money Spot, the U.S. Bancorp Assignees, Trans Fast, and the Wilmington Assignees each assert that neither Egan nor MVMC ever obtained any ownership in the claimed portions of the Seized Funds. According to the Government, the Claimants fail to assert any

interest in a specific res because they "implausibly" claim that
"their contracts were honored and that their monies were
segregated and distinguishable from each and every other victim
in this matter." (Gov't Mem. Supp. 19, Mar. 8, 2011, ECF No.
125.)  However, no claimant's petition depends on a claim that
none of their money was ever misappropriated or commingled.
Even those Claimants who suggest the possibility that their
money was neither commingled nor misappropriated in the past do
not rely on this suggestion in asserting an ownership interest
in particular portions of the Seized Funds.

A common thread runs through all of the Claimants'
petitions.  Each asserts that when the Seized Funds were taken
out of the MVMC vaults in February 2010, portions of the Seized
Funds had not yet been misappropriated or commingled by Egan or
MVMC employees and therefore remained property of the Claimants,
as if the money had not been delivered to MVMC.  For example,
the U.S. Bancorp Assignees claim total losses resulting from
Egan and McGarry's fraud of $17,973,722, but their petition
seeks recovery of only the particular $3,310,000 in U.S.
currency located in the MVMC vaults at the time of the seizure.
Their petition seeks the return of less than 20% of the total
losses sustained by the U.S. Bancorp Assignees.  Certain
claimants admit that MVMC counted their money and transferred it
by wire, but contend that this alone does not constitute

misappropriation or commingling and assert a legal interest in portions of the Seized Funds superior to the Government's. (Money Spot, Inc. Mem. Opp. 3, ECF No. 152.)

### III.   Discussion

**A.   Legal Standards**

The procedures followed in criminal forfeiture proceedings are set forth in Criminal Rule 32.2 and 21 U.S.C. § 853. <u>See</u> 18 U.S.C. § 981(b)(2); 28 U.S.C. § 2461(c).

**1.   Motion to Dismiss Standard**

As noted, a motion to dismiss a third-party petition in a forfeiture proceeding pursuant to Criminal Rule 32.2(c)(1)(A) is treated as a motion to dismiss a civil pleading pursuant to Civil Rule 12(b)(6). <u>Willis Management</u>, 2011 WL 2726055, at *5. Therefore, the Court may grant a Criminal Rule 32.2(c)(1)(A) motion only where a petition fails to include sufficient "facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A district court must "assume that the facts set forth in the petition are true," but "is not required to accept any legal conclusion included in the petition." <u>Willis Management</u>, 2011 WL 2726055, at *5 (citing Criminal Rule 32.2(c)(1)(A); <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).

**2.  Legal Standard for Recovery of the Seized Funds**

A district court must order a person convicted of defrauding or conspiring to defraud a financial institution to forfeit to the Government "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." 18 U.S.C. § 982(a)(2).  However, criminal forfeiture proceedings are <u>in personam</u> actions against the assets of defendants and serve "as part of the penalty for the defendant's conviction." <u>United States v. Nava</u>, 404 F.3d 1119, 1124-25 (9th Cir. 2005); <u>see also</u> <u>United States v. Juluke</u>, 426 F.3d 323, 327 (5th Cir. 2005) ("Unlike the rationale of the civil forfeiture provision, the policy rationale behind the criminal forfeiture provision is to punish the convicted.").

Therefore, in criminal forfeiture proceedings conducted pursuant to 21 U.S.C. § 853(n), the Government "stands in the defendant's shoes," and a petitioner who establishes a legal interest in property superior to the defendant is entitled to recovery of its property. <u>United States v. Nektalov</u>, 440 F. Supp. 2d 287, 294-95 (S.D.N.Y. 2006), <u>aff'd</u> <u>E.J.D. Diamond Manu. v. United States</u>, 273 Fed App'x 65 (2d Cir. 2008).  In other words, "a defendant's consent to forfeit property does not expand the Court's power over that property, if the property is not the defendant's own." <u>United States v. Schwimmer</u>, 968 F.2d 1570, 1580-81 (2d Cir. 1992).

The district court is required to amend a preliminary forfeiture order where a claimant demonstrates by a preponderance of the evidence that the claimant had a legal right, title, or interest in the property that was either: (1) vested in the third party rather than the defendant; or (2) was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. 21 U.S.C. § 853(n)(6). See Willis Management, 2011 WL 2726055, at *8.

Whether a claimant has a "legal interest" is determined by reference to the law of the state giving rise to the property interest asserted. Willis Management, 2011 WL 2726055, at *5 (citing Pacheo, 393 F.3d at 353-56). However, as a matter of federal law, only one claiming an interest in the specific property--the res--that is the subject of a preliminary forfeiture order has standing to bring a claim. DSI Assocs. LLC v. United States, 496 F.3d 175, 184 (2d Cir. 2007). Therefore, a general creditor of the defendant may not recover funds by filing a petition under 21 U.S.C. § 853(n). Id.

In their petitions, Claimants argue that prior to any actual misappropriation or commingling of funds by MVMC, their money was held as a bailment, giving MVMC a mere possessory interest in the Claimants' money. Under New York law, a bailment is defined as a

-16-

> delivery of personal property for some particular
> purpose, or a mere deposit, upon a contract express or
> implied, and that after such purpose has been
> fulfilled it shall be redelivered to the person who
> delivered it, or otherwise dealt with according to his
> directions or kept until he reclaims it, as the case
> may be. It is essential that there be either an actual
> or constructive delivery by the bailor as well as
> actual or constructive acceptance by the bailee.

Herrington v. Verrilli, 151 F. Supp. 2d 449, 457 (S.D.N.Y. 2001)

(quoting Mays v. New York, N.H. & H.R. Co., 97 N.Y.S.2d 909, 911

(Sup. Ct. App. Div. 1950)).  A bailor retains an ownership

interest in the bailment, but under the forfeiture statute, any

property that constitutes proceeds of fraud must be forfeited to

the Government. 21 U.S.C. § 853(a)(1).

**B.   Government's Iqbal and Twombly Argument**

The Government contends that the Court should dismiss the

Claimants' petitions because they all rely on allegations that

are "speculative" and "implausible," and are therefore subject

to dismissal under Iqbal and Twombly.  However, the Government

specifically challenges only a small set of the Claimants'

allegations as "speculative" under Iqbal and Twombly.  While

acknowledging that many of the allegations in the Claimants'

petitions are not speculative, the Government finds implausible

the Claimants' "assumption that their contracts with MVMC and

its affiliated entities--which required that Petitioners' funds

be kept in sealed containers, or otherwise be segregated from

-17-

all other customers' funds--were respected." (Gov't Mem. Supp.
19 (footnote omitted).)

   In order to advance its Iqbal and Twombly argument, the
Government mischaracterizes the facts alleged in the Claimants'
petitions.  None of the pending petitions asserts that a
particular claimant's contracts with MVMC were honored by Egan
and his employees at all times.  Rather, the Claimants allege
that specific, identifiable portions of the Seized Funds in
which each claims an interest had not yet been commingled or
misappropriated at the time that these funds were seized.   In
its Reply Memorandum, the Government asserts that its "filings
demonstrate that the funds were commingled." (Gov't Reply Mem.
15, June 10, 2011, ECF No. 168.)  However, Special Agent
Hilliard did not reach such a conclusion.  As set forth in his
First Declaration, he suggested that the Government lacked any
ability to determine whether particular bags had previously been
tampered with by MVMC. (First Hilliard Decl. ¶ 11(b) ("We have
been unable to determine with certainty which of the bags
collected were in fact [commingled] by MVMC.").)

   Seemingly conceding that the facts alleged in the
Claimants' petitions are plausible and not speculative within
the meaning of Iqbal and Twombly, in its Reply Memorandum the
Government argues that its motion to dismiss ought to be granted
because "the plain language" of 21 U.S.C. § 853(n)(6) places a

-18-

burden of proof on claimants in ancillary forfeiture proceedings. (Gov't Reply Mem. 4.)  However, the fact that the Claimants bear the ultimate burden of proof in this ancillary proceeding is irrelevant to the disposition of the instant motion to dismiss.  A movant seeking dismissal under Iqbal and Twombly bears the burden of showing that a non-movant's assertions of fact are "implausible," because a district court is required to make all reasonable inferences in favor of the non-movant. Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003) (citing Thompson v. Cnty. of Franklin, 15 F.3d 245, 249 (2d Cir. 1994)).

The Government takes the position that certain funds possessed by Egan and MVMC became fraud proceeds when Egan and MVMC misappropriated and commingled these funds.  As a legal argument, the Government's position is sound; property becomes forfeitable to the Government when one in lawful possession of that property fraudulently or otherwise unlawfully misappropriates the property. 21 U.S.C. § 853(a) (requiring "any person convicted" of certain crimes to "forfeit to the United States, irrespective of any provision of State law . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation.").  The Claimants do not challenge the Government's legal position that fraud proceeds held by a bailee are

-19-

forfeitable.  Rather, the Claimants argue that specific portions of the Seized Funds were not actually misappropriated or commingled, and therefore are not "proceeds" of Egan and McGarry's fraudulent scheme.

The Government's argument that the facts asserted in the petitions are implausible and speculative is without merit. Claimants plausibly allege facts which, if true, may entitle the Claimants to the return of the Seized Funds.  Although in order to recover, each claimant must prove by a preponderance of the evidence that it possessed a legal interest in specific property superior to any interest held by Egan, the Claimants are entitled to a hearing on the merits of their claims. 21 U.S.C. § 853(n)(2), (6).

**C.   Government's Equity Argument**

The Government alternatively argues even if portions of the Seized Funds actually belonged to particular claimants because those specific portions were not proceeds of Egan and McGarry's fraud, the Claimants cannot recover this money because they "should not benefit from . . . fortuitous timing when they had unwittingly received fraud proceeds in the past." (Gov't Mem. Supp. 20.)  The Government repeats this argument throughout its supporting memoranda in slightly different forms, arguing that recovery of the Seized Funds would "undermine victim recovery," that a claimant cannot be both a "victim" and a "non-victim,"

-20-

that pro rata distribution of the Seized Funds is an
"appropriate remedy," and finally, that the Claimants "cannot
escape from past fraud with present claims." (Id. at 10, 13, 16,
and 17.)   In short, the Government takes the position that the
Court should determine the outcome of this ancillary proceeding
with resort to equitable rather than legal principles, and use
funds in MVMC's possession at the time of the February 2010
seizures in order to aid in the compensation of other victims
because to do so would be more "fair" in the Government's eyes.

The Government's argument in favor of the "equitable"
distribution of the property fails because it is without support
in the criminal forfeiture statute, which gives third-parties
the right to recover property in which they have a legal
interest. 21 U.S.C. § 853(n)(6)(A)-(B).  The statute contains no
distinction between those who are victims of fraud and those who
are not victims of fraud; under the plain language of the
statute, any third party with a legal interest in property
superior to the defendant's may recover that property. See
United States v. Nolasco, 354 Fed. App'x 676, 680 (3d Cir. 2009)
(citing United States v. Soreide, 461 F.3d 1351, 1354 (11th Cir.
2004) ("Ownership is the only relevant issue in a Section 853(n)
ancillary proceeding.").

While the Government cites Securities and Exchange
Commission v. Credit Bancorp, 290 F.3d 80, 89 (2d Cir. 2002),

-21-

for the proposition that a pro rata distribution of available
funds is the appropriate remedy to compensate victims of a
fraudulent scheme, that case is distinguishable because it
involved a civil enforcement action brought by the SEC rather
than criminal forfeiture proceedings.  In Credit Bancorp, the
U.S. Court of Appeals for the Second Circuit held that it was
within the district court's discretion to order a pro rata
distribution of funds to the victims of a Ponzi scheme.  Credit
Bancorp, being a civil case, is inapplicable to criminal
forfeiture actions, which are governed by 21 U.S.C. § 853 and
Criminal Rule 32.2.  Equitable distribution is not appropriate
here if the Claimants establish their legal interests in the
Seized Funds.

## IV.  Conclusion

As discussed above, the Claimants' petitions plausibly
assert legal interests in portions of the Seized Funds, and
therefore are entitled to a hearing on the merits.  Therefore,
the Government's Motion to Dismiss Petitions for Ancillary
Hearing [Docket Number 124], is **DENIED.**

All parties to this ancillary forfeiture proceeding are directed to appear for a pre-hearing conference on August 29, 2011, at 11:00 a.m. in Courtroom 20-C of the Daniel Patrick Moynihan United States Courthouse.

**SO ORDERED.**

Dated:   New York, New York
         August  2 , 2011

_John F. Keenan_
JOHN F. KEENAN
United States District Judge

-23-