USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug. 13, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------- X

UNITED STATES OF AMERICA        :
                                :
     -against-                  :
                                :          No. 10 Cr. 191 (JFK)
ROBERT EGAN,                    :          **OPINION & ORDER**
                                :
                    Defendant.  :
--------------------------------- X
ADP FEDERAL CREDIT UNION,        :
                                :
          Third-Party Petitioner. :
--------------------------------- X

APPEARANCES

FOR UNITED STATES OF AMERICA
     Preet Bharara
       U.S. Attorney, Southern District of New York
     By:  Andrew C. Adams

FOR ADP FEDERAL CREDIT UNION
     Hahn & Hessen LLP
     By:  Jonathan M. Proman
          Steven J. Mandelsberg

**JOHN F. KEENAN, United States District Judge:**

     Before the Court are two motions:  the Government's motion

to dismiss non-party Petitioner ADP Federal Credit Union's

("ADP") petition to determine rights to substitute assets (the

"Petition") and ADP's cross-motion for summary judgment on its

Petition.  For the following reasons, the Government's motion to

dismiss is granted and ADP's motion for summary judgment is

consequently denied.

## I. Background

The material facts are not disputed.  On March 10, 2010, a grand jury indicted Defendant Robert Egan and a co-defendant on one count of conspiracy to commit bank and wire fraud and six substantive counts of bank fraud.  The conspiracy had been ongoing from some time in 2005 until February 2010.  The indictment included a forfeiture allegation seeking the criminal proceeds obtained as a result of Egan's fraud as well as a provision declaring that the Government would seek forfeiture of substitute assets if criminal proceeds were unavailable. (Indictment ¶¶ 37–38.). On September 15, 2010, Egan pled guilty to all seven counts.  Egan also consented to forfeiture of $70 million in U.S. currency, which represented the criminal proceeds from his fraud.

On January 10, 2014, ADP obtained a stipulation of judgment against Robert Egan for $1,072,733.98 in a separate action. See ADP Federal Credit Union v. Mount Vernon Money Ctr. Corp., No. 10 Civ. 3772, ECF No. 69 (S.D.N.Y. Jan. 10, 2014).  According to ADP's Petition, ADP docketed its stipulated federal judgment with the New York County Clerk's Office pursuant to N.Y. C.P.L.R. § 5018(b) on January 27, 2014.

After the Government was unable to locate sufficient criminal proceeds to satisfy the initial forfeiture order, the Government filed a motion for forfeiture of substitute assets on

April 7, 2014.  Specifically, the Government sought Egan's 123,923.24 shares of Non-Cumulative, Perpetual Preferred Stock in Metropolitan Bank Holding Corp. (the "Shares").  On April 11, 2014, the Court granted the Government's motion and entered a Second Preliminary Order of Forfeiture as to Substitute Property. (ECF No. 377.)

By a letter dated April 16, 2014, ADP acknowledged receipt of the Government's motion and entry of the Substitute Asset Order. (ECF No. 378.)  ADP objected to the preliminary forfeiture order and expressed its intent to file a petition to determine its rights to the Shares.[1]  On April 21, 2014, ADP delivered a property execution to the New York County Sheriff's Office pursuant to N.Y. C.P.L.R. §§ 5202 and 5234.

On April 25, 2014, ADP filed the Petition. (ECF No. 380.) Starting on May 6, 2014, the Government posted a notice of the criminal forfeiture on the official government website for

---

[1]  ADP also indicated that it had planned to respond to the Government's motion within fourteen days as provided by Local Criminal Rule 49.1(b), although it acknowledged that, pursuant to Fed. R. Crim. P. 32.2, the Court "must" enter a preliminary forfeiture order "without regard to any third party's interest in the property."  To the extent that ADP is arguing that the Court should have allowed ADP fourteen days to weigh in on the Government's motion for the preliminary order of forfeiture, that argument is rejected because, as ADP acknowledges, third parties do not have a right to challenge the motion for preliminary forfeiture until after the order has already been entered.

thirty consecutive days.  The period to file a third-party claim ended on July 5, 2014.  No other claims were filed.

The Government then moved to dismiss ADP's Petition, and ADP cross-moved for summary judgment.  After the motions were fully briefed, the Court heard oral argument.

## II. Discussion

### A. Legal Standards

The criminal forfeiture proceedings at issue here are governed by 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure.  The Government's motion to dismiss a third-party petition under Rule 32.2 is analyzed like the familiar motion to dismiss a civil complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004).  Therefore, the facts set forth in the petition are assumed true, and a motion to dismiss the petition is only granted if the petition "fails to include sufficient 'facts to state a claim to relief that is plausible on its face.'" United States v. Egan, 811 F. Supp. 2d 829, 837 (S.D.N.Y. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2008)).

ADP's motion for summary judgment on the Petition is governed by Rule 56 of the Federal Rule of Civil Procedure. See Fed. R. Crim. P. 32.2(c)(1)(B); see also United States v. King, No. 10 Cr. 122, 2012 WL 2261117, at *3–4 (S.D.N.Y. June 18,

4

2012) (applying Rule 56 in such a scenario).  Thus, a court
addressing a motion for summary judgment under Rule
32.2(c)(1)(b) shall grant summary judgment "where there exists
no genuine issue of material fact and, based on the undisputed
facts, the moving party is entitled to judgment as a matter of
law." Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir.
2012) (internal quotation marks omitted).  When considering a
motion for summary judgment, a court must "resolve all
ambiguities and draw all permissible factual inferences in
favor" of the nonmoving party. Winfield v. Trottier, 710 F.3d
49, 52-53 (2d Cir. 2013) (internal quotation marks omitted).

## B. Analysis

Based on the parties agreed upon timetable, the Government
has the superior interest in the Shares.  ADP readily
acknowledges that its January 27, 2014 judgment did not convey
it an interest in the Shares. (ADP Mem. 4, 20.); see also United
States v. Madoff, No. 09 Cr. 213, 2012 WL 1142292, at *4
(S.D.N.Y. Apr. 3, 2012) ("To have a claim in the specific
property, a creditor, therefore, must secure a judgment or
perfect a lien against a particular item." (emphasis added)).
Instead, ADP argues that its interest in the Shares vested on
April 21, 2014 when it delivered the property execution to the
sheriff. (ADP Mem. 4, 20.).  According to ADP, the April 21
property execution gave it a superior interest in the Shares

because the Government's interest does not vest until entry of a final order of forfeiture and thus the April 11 preliminary forfeiture order was insufficient to vest the Government with any rights superior to third parties like ADP.  ADP is simply wrong.  Although ADP frames this as state law property rights trumping federal forfeiture law, ADP loses either way.

Before diving into its analysis, the Court notes that ADP recognizes that the preliminary order of forfeiture: "(i) divested Robert Egan of his interest in the Metropolitan Bank stock with finality; and (ii) upon that order's entry the Government stepped into Egan's shoes vis-à-vis rights to Metropolitan Bank stock." (ADP Reply 1.)  That is also the law. A criminal defendant forfeits his interest in the property, not the property itself. See Pacheco, 393 F.3d at 354–56; see also id. at 349 ("[A] criminal defendant can only be made to forfeit what was his in the first place . . . .").  The Government thus "stands in the defendant's shoes." Egan, 811 F. Supp. 2d at 838. With that in mind, the Court turns to an analysis of New York law.

Two features of N.Y. C.P.L.R. § 5202, which ADP relies on, serve to defeat ADP's claim.  First, section 5202 is explicitly limited to the judgment debtor's interest in the property. See § 5202 ("Where a judgment creditor has delivered an execution to a sheriff, the judgment creditor's rights in a debt owed to the

judgment debtor or <u>in an interest of the judgment debtor in
personal property</u>, against which debt or property the judgment
may be enforced, are superior . . . ." (emphasis added)).
Second, section 5202 only concerns transfers that occur after
execution of the lien. <u>See</u> N.Y. C.P.L.R. § 5202(a) practice
commentary ("The general rule is that any transfer made by the
judgment debtor <u>after</u> the execution has been put into the
sheriff's hands will be ineffective against the judgment
creditor." (emphasis added)).

Here, as ADP acknowledges, the Government had already
stepped into Egan's shoes by the time ADP had delivered the
property execution.  The preliminary forfeiture order divested
Egan of his interest in the Shares and transferred that interest
to the Government (subject, of course, to whatever third-party
interests may have already vested) on April 11, 2014.  As we now
know, at that time, no one other than Egan had a vested interest
in the Shares.  Because the transfer of Egan's interest
occurred, at the latest, ten days before ADP's delivery of the
property execution, it was effective as against ADP.  Since the
Government stepped into Egan's shoes at the moment of
preliminary forfeiture, which ADP acknowledges, ADP could no
longer place a lien on the Shares because Egan no longer had any
interest in the Shares.  Thus, ADP's purported interest in the
Shares is a nullity.

ADP also argues that the Government, before moving for the preliminary order of forfeiture, "could have ascertained whether Robert Egan ha[d] outstanding judgment creditors or otherwise acted to try to obtain first-priority rights to the [Shares] under state law." (ADP Mem. 11.)  ADP cites United States v. Salvagno for the proposition that the Government must utilize rights of execution on a money judgment. No. 02 Cr. 5, 2006 WL 2546477, at *16, 20 (N.D.N.Y. Aug. 28, 2006).  But Salvagno involved a situation where the third party did not have notice of the forfeitability of the property because the substitute assets at issue were not listed in the original preliminary forfeiture order. See id.  Indeed, the court noted that the original preliminary forfeiture order only gave the Government a money judgment and did not list specific assets. See id. at *16. Moreover, the substitute assets at issue had already been transferred before the Government amended the preliminary forfeiture order to include them. See id. ("In our case, the request for an amendment of the POF did not occur until after the $200,000 exchanged hands.  A fortiori, neither Salvagnos nor LAG would know that the substituted asset, the $200,000, would be the direct aim of the Government's efforts.").  Thus, Salvagno is simply inapposite.  The Salvagno court even recognized that it would be an entirely different case where, as here, the preliminary order of forfeiture identifies the

substitute assets. See id. ("However, once a POF identifies the specific substituted property, by virtue of such notice, a party cannot disclaim that they were not on alert that the property they are about to receive will not be seized.  Also, at that time, the substituted asset may be restrained or frozen." (emphasis in original)).

Moreover, although the N.Y. C.P.L.R. defines ADP's interest, the C.P.L.R. is not the only way that such interests can be created and does not necessarily define the Government's interest. See David D. Siegel, New York Practice § 518 (5th ed.) ("The only liens created by the CPLR are judgment liens, and it is therefore only in respect of judgment creditors that the CPLR resolves priorities.  The CPLR does not in any way purport to resolve all of the limitless disputes that can arise among an equally limitless variety of other interests, and situations involving other interests are by no means rare.").  Indeed, it it is the existence of third-party interests, not the Government's, that are governed by state law. See Madoff, 2012 WL 1142292, at *3 ("[T]he forfeitability of third-party interests is determined by federal law, while their existence is determined by state law." (emphasis added)).  Since the preliminary forfeiture order served to divest Egan of his interest in the Shares and transferred it to the Government, there is no merit to ADP's argument that the Government should

have to go through the additional trouble of obtaining its own judgment lien.  The Government obtained an interest in the Shares because, under federal law, Egan forfeited his interest in them to the Government.

ADP also argues that, according to principles of federal forfeiture, the Government's interest in the Shares only vested as to Egan but not third parties.  But ADP fares no better with its appeal to federal forfeiture law.  Under federal law, a third-party can show a superior interest in the property only if it (a) has "an interest in the property that is superior to the criminal defendant's because it arose prior to 'the time of the commission of the acts [that] gave rise to forfeiture'" or (b) is a "'bona fide purchaser for value' of the property who was 'reasonably without cause to believe that the property was subject to forfeiture' at the time of purchase." Pacheco, 393 F.3d at 353 (quoting § 853(n)(6))(citations omitted).  Although the parties' agreed-upon timeline suggests a simple answer, the Court's analysis is complicated by some uncertainty concerning when the Government's interest vests in substitute assets.

For the proceeds of a criminal activity, the Government's interest relates back and vests at the time of the commission of the crime. See § 853(c).  If that were true for substitute assets, the Government would clearly have superior title because its interest would have vested some time in 2005 when the

10

charged conspiracy began.  However, there is no explicit relation-back provision for substitute assets in § 853, and courts have reached different conclusions about whether relation back applies to substitute assets. See, e.g., United States v. McHan, 345 F.3d 262, 271–72 (4th Cir. 2003) (holding that the relation-back theory applies to substitute assets); United States v. Kramer, No. 06 Cr. 200, 2006 WL 3545026, at *1 (E.D.N.Y. Dec. 8, 2006) ("[A]ny interest of the Government in the identified substitute assets . . . cannot be claimed until at least the time of conviction, if not later . . . .").

The Second Circuit has not yet weighed in on the precise timing, although United States v. Gotti, 155 F.3d 144 (2d Cir. 1998), held that pretrial restraints of substitute assets were improper in the context of the RICO forfeiture statute.[2] See id. at 149–50.  Some courts in this circuit have read Gotti as foreclosing the relation-back of the Government's interest in substitute assets to the time of the crime. See, e.g., Salvagno, 2006 WL 2546477, at *19.  However, courts have also indicated in dicta that the Government's interest vests at some point before the entry of the final, as opposed to the preliminary, order of

---

[2] The RICO forfeiture statute, 18 U.S.C. § 1963, and § 853 are "are so similar in legislative history and in plain language as to warrant similar interpretation." See DSI Assocs. LLC v. United States, 496 F.3d 175, 183 n.11 (2d Cir. 2007) (internal quotation marks omitted).

forfeiture. See, e.g., id. ("Not until such time that a court finds that the elements [for substitute assets] have been met and an order of forfeiture has been granted will the Government have superior rights to substitute assets."); see also United States v. Peterson, 820 F. Supp. 2d 576, 585 (S.D.N.Y. 2011) ("To give full force to the criminal forfeiture statute, I conclude that the government's interest in substitute assets vests upon the issuance of the grand jury indictment."); United States v. Jennings, No. 98 Cr. 418, 2007 WL 1834651, at *4–5 (N.D.N.Y. June 25, 2007). The Court need not define a precise moment of vesting because it concludes that entry of a preliminary order of forfeiture is the latest that the Government's interest arises.

The Court notes at the outset that ADP points to no authority that squarely supports its argument that the preliminary forfeiture order is insufficient to vest the Government with a superior right to the property. As summarized above, although courts disagree as to exactly when the Government's interest in substitute assets vests, entry of the preliminary forfeiture order is the latest date courts have fixed as the point of vesting.

The clear language of the statute supports this conclusion, as it requires a showing that

> the petitioner has a legal right . . . in the
> property and such right . . . renders the order
> of forfeiture invalid . . . because the right
> . . . was vested in the petitioner rather than
> the defendant . . . or was superior to any right
> . . . of the defendant at the time of the
> commission of the acts which gave rise to the
> forfeiture of the property . . . .

§ 853(n)(6)(A).  A quick read of the first clause appears

to support ADP's argument.  ADP has a colorable claim that

it "has" the legal right to the Shares, at least if you

accept that the April 21, 2014 property execution could

give it a claim to the Shares, which the Court of course

rejected above.  But the right must "render[] the order of

forfeiture invalid" because the right "was vested in the

petitioner rather than the defendant."  Whatever right ADP

can claim to have in the Shares, that interest could not

render the order of forfeiture invalid because it was not

vested in ADP rather than Egan before the preliminary order

of forfeiture became final as to Egan.  The use of the past

passive tense (i.e., was vested) makes clear that the

vesting of the petitioner's right must, at least, predate

the transfer of the purported interest from the defendant

to the Government.  The preliminary order of forfeiture is

final as to the defendant at the time of sentencing. Fed.

R. Crim. P. 32.2(b)(4)(A).  Here, the preliminary order of

forfeiture concerning substitute assets was signed post-

sentencing, meaning that it was already final as to Egan, which ADP concedes.  Because Egan forfeited his interest in the Shares to the Government, ADP cannot claw back Egan's interest for itself.

Certain features of Rule 32.2 also undermine ADP's claim that vesting occurs later.  Rule 32.2(b)(2)(A) requires the court, if it concludes that property is subject to forfeiture, to "promptly" enter the preliminary order of forfeiture "without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A).  The advisory committee's note to Rule 32.2(b) indicates that this rule corrects a previous defect in an old rule, and is therefore meant to "safeguard against the inadvertent forfeiture of property in which the defendant held no interest." Fed. R. Crim. P. 32.2(b) advisory committee's note.  Here, it is undisputed that Egan held full interest in the Shares at the time the Court entered the preliminary forfeiture order.

A review of the procedure for third-party challenges reinforces the Court's conclusion.  After a court orders forfeiture of a defendant's interest in property, the ancillary proceeding determines the extent of the defendant's interest in the property, but does not "involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited

property." Id.  It is thus apparent that Rule 32.2 and § 853 are
meant to allow for the relatively easy forfeiture of property
that a defendant has a likely interest.  A basic assumption of
the third-party proceeding is that sometimes the Government will
claim an interest in property that is not exclusively the
defendant's (or, despite appearances, is not in fact the
defendant's), and that the proceeding will help sort out the
interests of third parties.  Only after a defendant has already
forfeited his interest, whatever that may be, must the court
inquire as to potential third-party interests.  Implicit in the
idea that third parties cannot intervene before the defendant
forfeits his interest is that the third party already has an
interest in the property at the time of forfeiture.  Here, ADP
clearly had no interest in the Shares and could not have
intervened to stop Egan's forfeiture at the time the Court
entered the preliminary order of forfeiture.

Similarly, the public notice period serves to warn third
parties that they are in danger of forfeiting their interest in
the property to the Government. See § 853(n)(1); Fed. R. Crim.
P. 32.2(b)(6).  The notice is not, however, a clarion call for
third parties to get their affairs in order so that may obtain
an interest in forfeited property.  ADP had a judgment against
Egan but did not execute a lien on the Shares until the
Government had already obtained the preliminary forfeiture

order.  The Government went through the trouble of locating the
Shares, and it would be unfair to reward ADP for sitting on its
rights while the Government expended resources.

ADP also loses on the bona fide purchaser exception, which
requires that the purchaser be "reasonably without cause to
believe that the property was subject to forfeiture" at the time
of purchase. § 853(n)(6)(B).  Although ADP tries to tie the
"purchase" to a contract entered into on November 1, 2006, ADP
had no arguable interest in the Shares (as opposed to a general
interest in payment) until it executed the lien with the sheriff
on April 21, 2014.  At that point, ADP had knowledge of the
Government's alleged interest as evidenced by its letter to the
Court on April 16, 2014, and therefore cannot succeed as a bona
fide purchaser.

Finally, ADP argues that the Court should distinguish the
cases suggesting that vesting of the Government's interest
before the preliminary forfeiture order.  According to ADP, the
instant case is different because it involves an "innocent third
party enforcing a judgment lien." (ADP Mem. 12.)  The Court
rejects that distinction.  First off, the statute offers no
textual support for setting ad hoc rules, other than to provide
that it be construed to effect its remedial purposes. See
§ 853(o).  If anything, the statute's remedial purpose weighs in
favor of the Government.  Additionally, the cases addressing the

timing of vesting each involve line drawing based on the facts
at issue with an eye toward the general purpose of the
forfeiture statute.  They merely illustrate the myriad
situations in which the statute applies, and do not suggest that
courts have free license to ignore the statute.  Moreover, the
statute already protects "innocent third parties," by way of the
bona fide purchaser for value exception, which, as just
discussed, does not apply to ADP.

Taken together, it becomes clear that § 853 and Rule 32.2
envision a "shoot first and ask questions later" procedure.
Here, the Government hit its mark:  Robert Egan.  No one else
had an interest in the Shares at the time Egan forfeited his
interest in the Shares to the Government.  Thus, there was no
inadvertent forfeiture of ADP's interest.

After considering both state and federal law, the Court
concludes that ADP has not sufficiently pled a right to the
Shares because the facts alleged in the Petition make clear that
the Government's interest in the Shares vested before ADP filed
its property execution with the sheriff.

### III. Conclusion

For the foregoing reasons, the Government's motion to dismiss the Petition is granted and ADP's cross-motion for summary judgment is denied.

**SO ORDERED.**

Dated:    New York, New York
          August 13, 2015

                                        _John F. Keenan_____
                                            John F. Keenan
                                    United States District Judge

18